SNELL & WILMER L.L.P.
Amy F. Sorenson, Bar. No. 191050
asorenson@swlaw.com
Kelly H. Dove (appearance *pro hac vice*)
kdove@swlaw.com
Aliya L. Astaphan, Bar No. 340162
aastaphan@swlaw.com
12230 El Camino Real, Suite 300
San Diego, California  92130
Telephone:     858.434.5020
Facsimile:      858.434.5006

Attorneys for Defendant
WELLS FARGO BANK, N.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HELEN PALMA,<br><br>  Plaintiff, on behalf of herself and all others similarly situated,<br><br>  v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION, and ROES 1-10,<br><br>  Defendants. | Case No. 3:24-cv-02618-JD<br><br>**SUPPLEMENTAL BRIEFING IN SUPPORT OF DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO COMPEL ARBITRATION**<br><br>Complaint Filed: February 2, 2024<br>Amended Complaint Filed: March 26, 2024<br>Amended Complaint Served: April 3, 2024<br>Trial Date: None |

## I. THE CREDIT CARD COLLECTION ACTION WAS NOT SUBJECT TO ARBITRATION.

*Questions Posed: (1) was the lawsuit filed by Wells Fargo against plaintiff Palma in 2017, see Dkt. No. 14 at 5, subject to an arbitration agreement of any kind? (2) if so, which agreement? (3) if not subject to arbitration, why not?*

**Answer:** No, the collection action initiated by Wells Fargo against Ms. Palma on July 16, 2019[1] was not subject to arbitration as the governing agreement excepts collection claims from its application. Pursuant to Ms. Palma's August 2016 default on her Credit Card Account, which account is governed by the parties' Credit Card Agreement, Wells Fargo filed a complaint against Ms. Palma in the Superior Court of California, County of San Francisco, Case No. CGC-19-577690 (the "Collection Action"), alleging claims for breach of contract and common counts for failure to pay her Credit Card Account pursuant to the Credit Card Agreement's terms. [Declaration of Jessica Rogers ("Rogers Decl.") ¶¶ 5-8, 13-14.]

The Collection Action was not subject to arbitration, as the Credit Card Agreement, and all amendments thereto, contain an arbitration provision that specifically excepts collection claims from its application. *Id.* ¶¶ 8-10 ("[I]f a Dispute arises between you and the Bank, upon demand by either you or the Bank, the Dispute shall be resolved by the following arbitration process. The foregoing notwithstanding, **the Bank shall not initiate an arbitration to collect a consumer debt** …." *Id.* (emphasis added). In compliance with the Credit Card Agreement's terms, Wells Fargo did not initiate an arbitration, and instead, initiated litigation and ultimately obtained a default judgment against Ms. Palma on October 17, 2019. *Id.* ¶ 15.

## II. THE FEE-SHIFTING PROVISION IS NOT UNCONSCIONABLE.

*Question Posed: (4) the Deposit Account arbitration agreement relied upon by Wells Fargo, see Dkt. No. 12-2, states that "the party that does not agree to submit to arbitration after a lawful demand by the other party must pay all of the other party's costs and expenses for compelling arbitration." Is this provision unconscionable given that Wells Fargo is overwhelmingly likely to be the party demanding arbitration, and there is no bilateral fees and costs recovery for a consumer who prevails in defeating an arbitration demand?*

**Answer:** No, the arbitration agreement in the parties' Deposit Account Agreement,[2] which permits the shifting of "costs and expenses for compelling arbitration" against the party who refuses to

---

[1] The Collection Action initiated against Ms. Palma was inadvertently represented as having been initiated in 2017 (*See* Dkt. 14 at 5), when it was actually initiated in 2019.
[2] The arbitration provision in the Deposit Account Agreement states in part that the parties "agree that if a Dispute arises …, the Dispute shall be resolved by the following arbitration process." Mot.

Supplemental Briefing in Support of Motion to Compel Arbitration – 3:24-cv-02618-JD
1

submit to arbitration following a lawful demand (the "Fee-Shifting Provision"), is not unconscionable and should be enforced. "Procedural and substantive unconscionability must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." *Baltazar v. Forever 21, Inc.*, 367 P.3d 6, 11 (Cal. 2016) (cleaned up) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 714 (Cal. 2000). California courts apply a sliding scale analysis under which "the more substantively oppressive a term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Ramirez v. Charter Commc'ns, Inc.*, 551 P.3d 520, 530 (Cal. 2024) (citing *Armendariz*, 6 P.3d at 690). However, courts may not apply principles of unconscionability in a way that undermines the FAA's objective "to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). Courts must thus give "due regard to the federal policy in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996). Unconscionability is a contract defense for which the party asserting the defense bears the burden of proof. *Sanchez v. Valencia Holding Co.,* 353 P.3d 741, 748–49 (Cal. 2015); *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017).[3]

### A. The Account Agreement Is Not Procedurally Unconscionable.

The California Supreme Court has recognized that "[o]rdinary contracts of adhesion, … are indispensable facts of modern life that are generally enforced," but holds that they "contain a degree of procedural unconscionability even without any notable surprises." *Baltazar*, 367 P.3d 6, 11 (2016). Wells Fargo acknowledges the Deposit Account Agreement is a standardized contract, and thus may be considered "minimally" procedurally unconscionable under California law. However, the degree of procedural unconscionability is indeed minimal because there is no oppression or surprise. *See Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (Cal. Ct. App.

---

at 3-4; Acosta Decl., Dkt. 12-2, ¶ 9. It further provides that "the benefit of arbitration is diminished if either Wells Fargo or you refuse to submit to arbitration following a lawful demand. Thus, the party that does not agree to submit to arbitration after a lawful demand must pay all of the other party's costs and expenses for compelling arbitration." *Id.*, Ex. B.
[3] Here, Ms. Palma waived this defense by not raising it in her Opposition to Wells Fargo's Motion to Compel Arbitration.

2001) (holding that [o]ppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice," and "[s]urprise involves the extent to which the supposedly agreed-upon terms are hidden in a prolix printed form drafted by the party seeking to enforce them"); *Assi v. Citibank, N.A.*, 2015 WL 166919, at *11 (N.D. Cal. Jan. 13, 2015) (finding no unconscionability based on surprise where agreement laid out terms).

Because there is no evidence of surprise here, and the arbitration agreement conspicuously sets forth its various terms concerning arbitration, including the Fee-Shifting Provision, the arbitration agreement, including its Fee Shifting Provision, is not procedurally unconscionable beyond the "minimal" degree. *See Youssofi v. Wells Fargo Bank, N.A.*, 2016 WL 11770361, at *5 (S.D. Cal. Oct. 24, 2016) (enforcing substantially similar Wells Fargo arbitration provision); *Baggaley v. Wells Fargo Bank, N.A.*, 2018 WL 8804575, at *3 (C.D. Cal. Nov. 18, 2018) (enforcing a similar fee-shifting provision because it was "listed in the arbitration clause, which is conspicuously set out in bold and capital lettering, and Plaintiff does not argue there was any element of surprise or that he was 'lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement'").

### B. The Fee-Shifting Provision Is Not Substantively Unconscionable.

"California courts have articulated numerous standards for determining substantive unconscionability," holding that the agreement must be "overly harsh," "unduly oppressive," "unreasonably favorable," or must "shock the conscience." *Poublon*, 846 F.3d 1251, 1261 (9th Cir. 2017). The "central idea" is that "the unconscionability doctrine is concerned not with a simple old-fashioned bad bargain but with terms that are unreasonably favorable to the more powerful party." *Id.* The Fee-Shifting Provision is not substantively unconscionable nor does it render the entire arbitration agreement unenforceable.

#### 1. The Fee-Shifting Provision Is Bilateral.

"[A] court cannot find substantive unconscionability unless an arbitration agreement lacks a modicum of bilaterality." *Youssofi*, 2016 WL 11770361 at *5 (citing *Armendariz*, 6 P.3d at 692). "In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged

provision." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003). An arbitration provision is sufficiently bilateral, for example, where it imposes many of the same rights and obligations on both parties, and does not impose "unreasonable costs or arbitrators fees" on a plaintiff. *Monzon v. Southern Wine & Spirits of Cal.*, 834 F. Supp. 2d 934, 943 (N.D. Cal. July 19, 2011).

Here, the Court asks whether the Fee-Shifting Provision is unconscionable given that Wells Fargo is "overwhelmingly likely to be the party demanding arbitration, and there is no bilateral fees and costs recovery for a consumer who prevails in defeating an arbitration demand." Dkt. 23. The Fee-Shifting Provision is not unconscionable for several independent reasons: (1) it is sufficiently bilateral, given that *either* side can compel arbitration and is entitled to its associated costs and expenses; (2) neither side is entitled to recovery in defeating such a motion, and the resulting costs for compelling arbitration are not unreasonable or prohibitive; and (3) that Wells Fargo may be more likely to enforce the provision is speculative and insufficient to find substantive unconscionability.

***First,*** the critical inquiry is whether the Fee-Shifting Provision is sufficiently bilateral or contains a "modicum of bilaterality." *Youssofi*, 2016 WL 11770361 at *5. Here, the Fee-Shifting Provision is sufficiently bilateral as it applies equally to both parties—on its face and in actual effect. The narrow shifting of fees incurred in connection with compelling arbitration applies regardless of which party opts to compel. Indeed, courts have consistently enforced identical or nearly identical fee-shifting provisions, finding them sufficiently bilateral. *Baggaley*, 2018 WL 8804575 at *3 ("The Court also finds that the fee provision is not substantively unconscionable because the fee provision is not one-sided—both parties are entitled to recover attorneys' fees spent in the process of compelling arbitration."); *Youssofi*, 2016 WL 11770361 at *6-7 (finding that substantially similar arbitration agreement meets the modicum of bilaterality requirement and does not invalidate the fee-shifting provision); *see also Wishner v. Wells Fargo Bank, N.A.*, 2016 WL 10988765 at *4 (C.D. Cal. Sept. 28, 2016) (finding substantially similar arbitration agreement is bilateral because both parties may resort to arbitration or small claims court).

For example, in *Perry v. MLB Advanced Media, L.P.*, the court analyzed a fee-shifting provision nearly identical to the provision here. 2018 WL 5861307, at *7 (C.D. Cal. May 30, 2018).

There, the plaintiff characterized the fee shifting provision as a "unilateral fee shift provision" even though the provision provided that "the other party shall recover all attorneys' fees and expenses reasonably incurred in enforcing this agreement to arbitrate." *Id*. The court disagreed with the plaintiff's characterization of the provision as unilateral, finding that it "specifically mandates that if '*either party* initiates' a lawsuit, then 'the *other party* shall recover' fees and expenses." *Id*. The court reasoned that the same provision could be used to seek fees and expenses from defendant if plaintiff sought to enforce the arbitration provision. *Id*. The *Perry* court concluded none of the provisions plaintiff challenged were "so one-sided as to shock the conscience." *Id*.

**Second,** the Fee-Shifting Provision is not substantively unconscionable because Ms. Palma has not established that the resulting costs for compelling arbitration would be unreasonable or prohibitive. In evaluating such provisions in consumer cases, courts employ an "ability-to-pay" approach "requiring a case-by-case determination of affordability for consumers." *Tompkins*, 840 F.3d at 1026.[4] This fact-intensive determination requires a plaintiff to provide evidence of their inability to pay. *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 90-91 (Cal. Ct. App. 2003) (plaintiff submitted substantial evidence of inability to pay, including income, expenses, savings, and the costs of arbitration). Courts also analyze cost-related provisions for substantive unconscionability by determining whether the fees are so expensive as to serve as a barrier to adjudication of a plaintiff's claims. *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 920, 353 P.3d 741, 755 (2015). Wells Fargo has not sought to recover attorneys' fees or costs, nor does it intend to do so here. Moreover, any fees would be limited to the costs of compelling arbitration. The Fee-Shifting Provision is no barrier to arbitration. To the contrary, it encourages parties to honor their contractual agreement to arbitrate by awarding fees to either party if the other breaches

---

[4] Courts apply different analyses based on whether the contract arises in an employment-related contract or a consumer-related contract. For employment cases, courts follow the *Armendariz* rule which is a categorical rule prohibiting employers from requiring employees to bear any type of arbitration expense that the employee would not be required to bear if the action were brought in court. *Tompkins*, 840 F.3d at 1026; *Armendariz*, 24 Cal.4th at 110-11; *see also Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 919-20 (2015) (*Armendariz*'s categorical rule for costs does not apply outside of the employment context). The California Supreme Court's recent decision in *Ramirez v. Charter Communications, Inc.*, 16 Cal.5th 478, 507 (July 15, 2024), which found a fee-shifting provision to be substantively unconscionable, is inapposite here because it too involved an employment agreement rendering the court's employment-based policy concerns (also reflected in *Armendariz*) not present here either. *See Sanchez*, 61 Cal. 4th at 919-20.

the agreement by resisting arbitration. By doing so, it promotes the FAA's policy in favor of enforcing arbitration agreements. *Concepcion*, 563 U.S. at 344 ("The principal purpose of the FAA is to ensure that private arbitration agreements are enforced according to their terms." (cleaned up)).

***Third***, that Wells Fargo is more likely to enforce the arbitration agreement is unsupported and insufficient to support a finding of substantive unconscionability. *Nevarez v. Forty Niners Football Company, LLC*, 2017 WL 3492110, at *13 (N.D. Cal. Aug. 15, 2017) (speculation cannot be the basis for a finding of unconscionability).[5] Consumers also enforce arbitration provisions. *See, e.g., Tonelli v. Wells Fargo Bank, N.A.*, 2021 WL 6689665 (N.D. Cal. Feb. 3, 2021) (granting plaintiffs' motion to compel arbitration under an arbitration agreement in the account agreement).[6]

In evaluating whether to invalidate an arbitration agreement, the United States Supreme Court has cautioned that the "risk" a plaintiff "will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement." *Green Tree Fin. Corp.-Ala v. Randolph*, 531 U.S. 79, 90-91 (2000); *see also Kilgore v. Key Bank, Nat. Assn*, 718 F.3d 1052, 1057 (9th Cir. 2013) (speculative possibility that students would incur arbitration fees in excess of their ability to pay was not substantively unconscionable). Here, the Fee-Shifting Provision is limited to the costs around compelling arbitration, which Wells Fargo in any event has not sought.

This fact weighs against a finding of substantive unconscionability. To the extent that the

---

[5] *See also, Braun v. Trans Union LLC*, 2019 WL 13083349 (C.D. Cal. Nov. 18, 2019) (consumer enforcing arbitration provision in lease agreement against Volvo); *Ma v. Gross*, 2020 WL 4674153 (W.D. Wash. Aug. 12, 2020) (granting plaintiffs' motion to compel defendants Petal Card and WebBank to compel based on an arbitration provision in a cardholder agreement); *Gonzalez-Pozo v. Empure Fire and Marine Ins. Co.*, 2023 WL 8111753 (D. Nev. Nov. 22, 2023); *Wise v. LoanMe, Inc.*, 2023 WL 5207468 (C.D. Cal. Apr. 25, 2023) (granting motion to compel arbitration against defendant based on an arbitration provision in a loan agreement); *LoBoeuf v. Banc of Am. Investment Servs., Inc.*, 2008 WL 11417062 (W.D. Tex. July 31, 2008) (same).

[6] The recent significant increase in mass arbitration actions suggests that Wells Fargo may not in fact be "overwhelmingly likely to be the party demanding arbitration." *See Wallrich v. Samsung Electronics America Inc.,* 106 F.4th 609 (7th Cir. July 1, 2024) (motion to compel arbitration brought by nearly 50,000 claimants against Samsung); *McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 811-12 (N.D. Ill. 2020) (granting plaintiff's motion to compel arbitration); *Adams v. Postmates, Inc.*, 414 F. Supp. 3d 1246, 1254 (N.D. Cal. 2019), aff'd, 823 F. App'x 535 (9th Cir. 2020) (granting plaintiffs' motion to compel arbitration); *Postmates Inc. v. 10,356 Individuals*, 2021 WL 540155 (C.D. Cal. Jan. 19, 2021) (granting motion to compel arbitration by defendants and requiring Postmates to pay attorney's fees); *Ma v. Twitter, Inc.*, 2024 WL 3086694 (N.D. Cal. Apr. 22, 2024) (employee's motion to compel arbitration denied); *Bernal v. Kohl's Corp.*, 2024 WL 4337452 (E.D. Wisc. Sept. 13, 2024) (appeal filed) (motion to compel by plaintiffs denied under Samsung); *Jones v. Starz Entertainment, LLC*, 2024 WL 1067505 (C.D. Cal. Mar. 11, 2024) (plaintiffs' motion to compel arbitration denied as moot).

Supplemental Briefing in Support of Motion to Compel Arbitration – 3:24-cv-02618-JD
6

Court is concerned with the effect of fee-shifting on other plaintiffs, such speculation cannot be the basis for finding that the agreement in this case is unconscionable, given the highly fact intensive and context dependent analysis required. *See Tompkins*, 840 F.3d at 1023. The Court should not invalidate the arbitration agreement on the speculative basis that a hypothetical plaintiff in a future case may be subject to prohibitive costs.

### 2. The Fee-Shifting Provision is also severable.

The Court's analysis into the conscionability of the Fee-Shifting Provision is independent of the entire arbitration agreement. "Even if substantively unconscionable terms are found in an agreement, they do not automatically render the entire agreement unenforceable." *Lang*, 347 F.Supp.3d at 431. The court should only refuse to enforce the contract if the entire agreement is permeated with unconscionability. *See Armendariz*, 24 Cal.4th at 122; *see also Lang*, 347 F.Supp.3d at 431-32 ("[A]n arbitration agreement is unenforceable only when the only way to cure the unconscionability is in effect to rewrite the agreement…." (cleaned up)). In determining whether an unconscionable clause can be severed, courts look to the central purpose of the contract and whether the unconscionable clause can be extracted from the provision without affecting the rest of the contract. *See Armendariz*, 24 Cal.4th at 122-27.

Here, neither the Deposit Account Agreement nor arbitration agreement are permeated with unconscionability. Rather, the Fee-Shifting Provision is a singular clause in the arbitration agreement which could be easily excised, and any potential unconscionability is confined to this provision. *See Lang,* 347 F. Supp.3d at 432-33 (noting courts decline to sever where agreements contain multiple unconscionable provisions such that the entire agreement lacks mutuality that is too pervasive to remove). Moreover, the Deposit Account Agreement contains a severability clause which demonstrates the fee provision could be severed without impacting the ability to enforce the remainder of the agreement. Acosta Decl., Dkt. 12-2, Ex. B at 38, Ex. C at 39 ("Any term of this Agreement that is inconsistent with the laws governing your account will be excluded to the extent of such invalidity. The invalid term will be considered modified by us and applied in a manner consistent with such laws. Such modification won't affect the enforceability or validity of the remaining terms of this Agreement."); *Lang*, 347 F. Supp.3d at 433 ("Here, the arbitration

agreement has a severability clause, allowing the Court to sever the unconscionable terms and enforce the remainder of the agreement.").

Additionally, the severance of the Fee-Shifting Provision would not affect the agreement's central purpose, which is to provide Ms. Palma and Wells Fargo with a streamlined dispute resolution process; the fee-shifting provision supports that purpose by encouraging the Parties to initiate claims with AAA, in accordance with their agreement. Acosta Decl. ¶ 14, Dkt. 12-2, Ex. B at 35, Ex. C at 35. The Fee-Shifting Provision can be extracted from the Arbitration Agreement without altering either side's core rights or obligations. Without the fee-shifting provision, the Parties are still bound to arbitrate their disputes with AAA, the FAA still governs the arbitration agreement, Wells Fargo still agrees to pay any arbitration costs under the AAA rules (subject to applicable law) and to reimburse Ms. Palma for up to $700 of her arbitration filing fees if she prevails, and each Party is still responsible for their own attorneys' fees incurred during the arbitration regardless of who prevails. *See id*. Wells Fargo and Ms. Palma also retain the right to compel arbitration of any dispute between them, whether the fee-shifting provision is included or severed. Acosta Decl., Dkt. 12-2, Ex. B at 38, Ex. C at 39. Accordingly, the Fee-Shifting Provision may be severed. *Grabowski*, 817 F.Supp.2d at 1179 (severing three unconscionable provisions, including an attorneys' fees provision, as the entire agreement was not permeated with unconscionability); *Jacobson v. Snap-on Tools Co.*, 2015 WL 8293164 at *5 (N.D. Cal. Dec. 9, 2015) (severing fee shifting provision to ensure the arbitration fees would "not effectively block every forum for redress of [plaintiff's] claims" (cleaned up)). Finally, as addressed in Wells Fargo's Reply, the arbitration provision's so-called poison-pill clause is limited to the specific provisions related private attorney general actions and the like. Dkt. No. 14 at 16-17. This clause's limited scope confirms that the remainder of the arbitration provision remains severable if any component is found unenforceable.

### III. CONCLUSION.

Wells Fargo respectfully requests that the Court grant the Motion to Compel Arbitration.

Dated: November 11, 2024

SNELL & WILMER L.L.P.

By: */s/ Kelly H. Dove*
  Amy F. Sorenson
  Kelly H. Dove (appearance *pro hac vice*)
  Aliya L. Astaphan

*Attorneys for Defendant, Wells Fargo Bank, N.A*

4859-0394-4438